UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES S. PAPE, et al.,<br><br>Defendants. | Case No.  24-cv-01001-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Relator Relator LLC brought this suit under the False Claims Act ("FCA") against Defendants James Pape, Jeanne DiBella, and The Articom Group, LLC ("TAG"), alleging that TAG submitted falsified documents to the United States Small Business Administration ("SBA") and as a result, received a Paycheck Protection Program ("PPP") Loan totaling $9,534,400.00. (Dkt. No. 1 ("Compl.").)  The Complaint comprises a single FCA claim.  (Compl. ¶¶ 59–64.) Defendants now move to dismiss Relator's Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and request that the Court take judicial notice of a publicly available website and data contained on it, Relator's False Claims Act litigation history, and a recent order from this District.  (Dkt. Nos. 30, 30-2.)  Because Defendants' motion to dismiss argued that Relator's prosecution of this action violates Article II of the Constitution, the United States intervened for the limited purpose of defending the constitutionality of the *qui tam* provisions of the FCA. (Dkt. No. 41 at 1.)[1]

---

[1] All references to page numbers refer to ECF pagination.

For the reasons that follow, Defendants' request for judicial notice and motion to dismiss are **GRANTED**.  This order assumes the parties' familiarity with the underlying facts, the applicable legal standards, and both sides' arguments.

***Request for Judicial Notice.***  The Court grants Defendants' request for judicial notice, which encompasses the federal government website SBA.gov, PPP data on SBA.gov, Relator's FCA litigation history, and the order granting defendants' motion to dismiss in in *United States ex rel. Relator LLC v. Williams et al.*, No. 3:22-cv-04957-LB.  Relator does not dispute that courts may take judicial notice of undisputed, publicly available information displayed on government websites, *United States ex rel. Relator LLC v. Baxter*, 3:23-cv-00336-WHO, 2025 WL 1343076, *5 n. 2 (N.D. Cal. May 8, 2025), as well as "documents on file in federal or state courts," *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

***Motion to Dismiss Legal Standard.***  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"—*i.e.*, the allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The False Claims Act imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false of fraudulent claim for payment" to the government. 31 U.S.C. § 3729(a)(1)(A).  Therefore, "[t]o adequately bring an action pursuant to the False Claims Act, Relator must allege: '(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due.'" *Baxter*, 2025 WL 1343076, at *5 (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 997 (9th Cir. 2010)).

Additionally, complaints alleging an FCA violation must also satisfy Rule 9(b), *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008), which requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b).  Accordingly, to satisfy Rule 9(b), an FCA complaint must "allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a

2

statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Lungwitz*, 616 F.3d at 998) (internal citation omitted).

Defendants raise three arguments in support of their motion to dismiss: (1) the Complaint fails to state a claim with particularity, as is required to state an FCA claim; (2) the FCA's public disclosure bar precludes Relator's claim; and (3) Relator's prosecution of this action violates Article II's Vesting, Take Care, and Appointments Clauses. Because Relator's Complaint fails to state its FCA claim with particularity, the claim is dismissed.

***Sufficiency of Allegations.*** Relator's Complaint fails to plead with particularity both that TAG's statements to the government were false and that they were made with scienter. As to falsity, Relator's Complaint alleges that TAG's loan applications misrepresented (1) that TAG had 500 employees or met the SBA's size standard, (2) that TAG was a "small business concern," and (3) that the PPP loan was necessary to support TAG's operations. (Compl. ¶¶ 7–11.) The allegations in the Complaint are inadequate to permit a reasonable inference that these representations were false.

First, although TAG indeed represented on its PPP application that in early 2020 it had exactly 500 employees, Relator's allegations are not sufficient to support an inference that this figure was inaccurate at the time TAG filed its application. Relator alleges only that at some point, TAG's website and ZoomInfo listed TAG as having more than 1,500 and 800 employees, respectively. (Compl. ¶ 7.) But these undated employment statistics do not provide a sufficient basis to infer that at the time TAG submitted its PPP application, it in fact employed more than 500 people. Accordingly, TAG's certification that it employed "no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA . . . for [its] industry" does not constitute a plausible misrepresentation. (Compl. ¶ 8.)

The "size standard" portion of that statement does not provide a basis for alleged falsity either. The quoted language refers to satisfying *either* the employee limit *or* the size standard. So, if TAG had 500 or fewer employees, the statement would be true regardless of whether TAG met the size standard. Furthermore, even if the statement were read as making an independent

representation about TAG's size, the representation would be that TAG met "the size standard *in number of employees* established by the SBA." (Compl. ¶ 8 (emphasis added).) Under the SBA regulations, "[t]he size standards themselves are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified." 13 C.F.R. § 121.201. Relator does not allege that TAG failed to meet the size standard for its industry as expressed in the number of employees. Instead, Relator asserts that TAG's annual receipts exceeded $16.5 million, which is the size standard as expressed in annual receipts for its industry. That does not adequately allege falsity.

Second, Relator has not sufficiently alleged that TAG falsely represented that it was a small business concern. Relator's Complaint observes that "[s]mall business concerns can be eligible borrowers even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a 'small business concern.'" (Compl. ¶ 9.) But the Complaint does not identify any specific representation by TAG that it met the definition of a "small business concern." Nor does the Complaint allege that TAG impliedly represented it was a "small business concern" by certifying its eligibility. There is no allegation, for example, that if TAG was under the 500-employee limit, it was still required to certify that it was a "small business concern" to be eligible.

Third, the Complaint does not plausibly allege that TAG falsified its representation that at the time it applied for a PPP loan, during COVID-19, "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." (Compl. ¶ 10.) The PPP Borrower's certification does not appear to require that the uncertainty have been "*adverse enough* to threaten payroll," specifically. (Compl. ¶¶ 10, 32.) A loan may still be "necessary" to support a business's operations, without a direct threat to payroll. Moreover, TAG's ultimate receipt of private funding that it used to successfully navigate the pandemic is, without more, insufficient to plausibly infer a lack of economic uncertainty justifying TAG's loan request at the time it was made. (Compl. ¶¶ 10–11.) Relator's conclusory assertion that "[i]t was evident from the onset of the pandemic that some commercial refrigeration and HVAC service companies . . . would thrive financially during the pandemic" similarly fails to sufficiently allege a lack of

4

economic uncertainty supporting the loan request.  (Compl. ¶ 11.)  Therefore, Relator's Complaint does not state a claim based on its allegations that TAG falsified its PPP loan application.

The Complaint also alleges that because of TAG's misrepresentations on its loan application, TAG's loan forgiveness documents necessarily falsified that TAG used the loan for authorized purposes.  (Compl. ¶ 13.)  This allegation, however, fails to specify which loan forgiveness documents were false.  And as discussed above, the Complaint does not plausibly allege that TAG falsely represented its PPP loan eligibility.  Relator's Complaint thus fails to state a claim arising from its allegations that TAG falsified its loan forgiveness documents.

As to scienter, the Complaint fails plead with particularity that TAG "provided statements to the government that were 'intentional, palpable lie[s],' made with 'knowledge of falsity and with intent to deceive.'"  *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1175 (9th Cir. 2006) (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265, 1267 (9th Cir. 1996)).  Even if the Complaint had sufficiently alleged falsity, it contains only conclusory allegations that TAG made those representations intending to deceive the government.  (Compl. ¶¶ 13–14, 46–47.)  But without more, these allegations are insufficient to permit a plausible inference that TAG's representations on its PPP application were made with an intention to deceive the government.  *See Iqbal*, 556 U.S. at 678.

Because Relator's Complaint fails to plead falsity and scienter with particularity as required under Rule 9(b), the Complaint fails to state an FCA claim, and Defendants' motion to dismiss is granted.  However, on the current record, the Court cannot conclude that amendment would be futile because the public disclosure bar does not apply to Relator's claim and Relator's prosecution of this action passes constitutional muster, for the reasons discussed below.  Accordingly, dismissal is with leave to amend.

***Public Disclosure Bar.***  The public disclosure bar, which precludes courts from asserting jurisdiction over certain FCA claims based upon the public disclosure of allegations or transactions, does not apply to Relator's claim.  *See* 31 U.S.C. § 3730(e)(4)(A).  The public disclosure bar applies if "(1) the disclosure at issue occurred through one of the channels

specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is 'based upon' the allegations or transactions publicly disclosed." *Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014) (quoting 31 U.S.C. § 3730(e)(4)(A)).

Although SBA.gov (and its predecessor PandemicOversight.gov) are indeed federal reports under Section 3730(e)(4)(A)(ii), *see United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-00924-TLN-CDB, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024), those websites disclosed only that TAG was approved for a PPP loan, that the loan was forgiven, and that TAG represented in its PPP application that it had exactly 500 employees—*i.e.*, they disclose the allegedly misrepresented state of facts. (Dkt. No. 30-6 at 2.) However, they did not disclose the allegedly true set of facts—*i.e.*, that TAG in fact employed more than 500 people at the time the PPP application was completed. Those facts were instead based on TAG's website and ZoomInfo. (Compl. ¶ 7.) But, as noted above, that information is insufficient to disclose the true employment numbers at the time of the application. Also, even if those sources were sufficient to disclose the true employment numbers, neither falls into one of the three enumerated categories of sources capable of giving rise to a public disclosure. 31 U.S.C. § 3730(e)(4)(A) (listing (1) federal hearings in which the government or its agent is a party, (2) federal reports, and (3) news media). Because public disclosures do not disclose both TAG's misrepresented and true employee numbers, there is no publicly disclosed "transaction warranting an inference of fraud" such that the public disclosure bar applies. *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) ("A transaction warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the actual state of facts." (quoting *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 235–36 (3d Cir. 2013))). Therefore, the public disclosure bar does not apply to Relator's claim.

***Constitutional Challenges to Qui Tam Relator.*** Relator's prosecution of this case does not violate the Vesting, Take Care, and Appointments Clauses of Article II. The Ninth Circuit has concluded that the *qui tam* provisions of the FCA do not violate the Appointments Clause because "a qui tam relator, who litigates only a single case, does not have 'primary responsibility' . . . for enforcing the FCA. Nor does a relator exercise authority so 'significant'

that the Constitution only permits an officer of the United States to exercise it." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993).  The mere fact that Relator has filed multiple *qui tam* suits does not materially change the Ninth Circuit's analysis, which observed that a relator conducts "litigation under the FCA with only the resources of private plaintiffs," a relator's responsibility extends only to individual discrete cases on a case-by-case basis, and such responsibility is subject to sufficient Executive branch limitation.  *See id*. at 758–59.  The reference to "a single case" in *Kelly* therefore does not appear to limit the opinion's constitutional holding to only those relators who have filed a single *qui tam* suit.  *See id*.

Defendants' Vesting and Take Care Clause arguments appear derivative of their Appointments Clause argument.  (*See* Dkt. No. 30 at 22 ("Relator has taken the *qui tam* model far too far—transforming itself an unappointed inferior officer that exercises unsupervised executive power without repercussion.").)  These arguments therefore fail for the same reason provided above, namely, because "the Executive Branch retains 'sufficient control' of relators such that their exercise of authority to sue on behalf of the United States does not 'impermissibly undermine' executive functions." *Kelly*, 9 F.3d at 758.  To the extent that Defendants' argument was intended to be independent of their Appointments Clause argument, they offer no explanation of such an argument, and it is therefore waived.  *See Badgley v. United States*, 957 F.3d 969, 979 (9th Cir. 2020).

For the foregoing reasons, Relator's claim is dismissed.  Dismissal is with leave to amend, as the Court cannot conclude on the current record that allowing amendment would be futile.  If Relator wishes to file an Amended Complaint correcting the deficiencies identified above, it shall do so by **January 14, 2026**.  Relator may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  If no such amended complaint is filed by that date, the claim that was dismissed in this Order will

7

remain dismissed.  The case is set for an Initial Case Management Conference on **Wednesday,**

**March 4, 2026**.

       **IT IS SO ORDERED.**

Dated: December 22, 2025

                                    RITA F. LIN
                                    United States District Judge